**SO ORDERED: February 4, 2015.**



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AUDRA DAWN PETERSON | ) | CASE NO. 14-4218-RLM-7 |
| | ) | |
| Debtor | ) | |

**ORDER DENYING CREDITOR'S MOTION TO DISMISS OR CONVERT**

    This matter came before the Court on November 11, 2014 upon the motion of Abigail Hinchy to dismiss this chapter 7 case or to convert it to a case under chapter 11. For the reasons stated below, the motion is denied.

### *Background*

    Audra Peterson (the "Debtor") and Davion Peterson ("Davion") became engaged in April, 2010 and eventually married. Davion also maintained a relationship with Abigail Hinchy ("Hinchy" or "Creditor') and Hinchy gave birth to their son in May, 2010, one month after the Debtor and Davion became engaged. Hinchy filed a paternity action against Davion, who in turn communicated to Hinchy that he had proof she had become pregnant intentionally. The Debtor was employed as a pharmacist at Walgreens Co. ("Walgreens") and Hinchy filled her prescriptions at Walgreens. Hinchy eventually learned that the Debtor had improperly accessed Hinchy's private

1

prescription and pharmaceutical information in May, 2010 and had most likely shared that information with Davion. Hinchy sued both the Debtor and Walgreens. A jury in September, 2013 awarded Hinchy $1,440,194.94 in damages against the Debtor and Walgreens, jointly and severally, along with $171,064.10 in pre judgment interest (collectively, the "Judgment") after finding that the Debtor had improperly accessed Hinchy's private pharmaceutical and prescription history and had shared it with Davion.

The Debtor filed this chapter 7 case on May 7, 2014 (the "Petition Date"). She did not complete her "Chapter 7 Statement of Current Income and Means Test Calculation " (Form B22A) because she asserts that her debts are not primarily consumer debts. The United States Trustee has not challenged that assertion. In her schedules, the Debtor lists only two secured debts -- a mortgage and a car loan collectively amounting to $193,500 -- both of which she stated an intention to reaffirm. She has minimal equity in either her home or her car. Although Davion did not file bankruptcy, his monthly income is part of the household income and therefore included in Schedule I. The Debtor and Davion have a combined monthly income of $9,815.00, of which $6,262 is from the Debtor's continued employment at Walgreens as a pharmacist. The three credit cards the Debtor listed on Schedule F amount to about $8,200 which is less than Davion's and Debtor's combined income for one month. The Debtor also has student loans with a balance of close to $45,000. Thus, Hinchy's judgment dwarfs all other debt.

Hinchy moved to dismiss the chapter 7 case under §707(b) because Hinchy maintains that the Debtor's debts are primarily consumer debts and granting chapter 7 bankruptcy relief would be an abuse of the provisions of chapter 7. Hinchy also seeks dismissal for "cause" under §707(a). If the court does not dismiss the case, Hinchy asks for the alternate relief of conversion to chapter 11 under §706(b).

### Discussion

### Dismissal under §707(b)

To dispel the myth that it was too easy for financially-able chapter 7 debtors to discharge their debts without paying anything to creditors, Congress passed the

2

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 812–13 (10th Cir.1999). BAPCPA added the requirement that individual debtors complete a "means test". The "means test" is Form 22A which takes into account the debtor's income, backs out certain allowable deductions, and deems that a "presumption of abuse" arises if the amount left is within or exceeds a statutory dollar range. *In re Millikan*, 2007 WL 6260855 at *1 (Bankr. S. D. Ind., September 4, 2007). The means test is codified in Section 707(b) of the Bankruptcy Code. If the presumption of abuse arises and cannot be rebutted by the debtor, the chapter 7 case may be dismissed. §707(b)(1). The purpose of the means test is to "weed out chapter 7 debtors who are capable of funding a chapter 13 case". *In re Fredman,* 471 B.R. 540, 542 (Bankr. S. D. Ill, 2012).

The means test and the provisions of §707(b) apply only to an individual chapter 7 debtor "whose debts are primarily consumer debts". §707(b)(1). Section 101(8) defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose". This definition parallels the definition used in various consumer protection laws and covers typical consumer credit transactions. *In re Ajunwa*, 2012 WL 3820638 at *8 (Bankr. S.D.N.Y., September 4, 2012); *Millikan* at *1. Classification of debts other than those arising from typical consumer credit transactions has proven difficult. Some courts have used the "profit motive" test wherein a debt is *not* a consumer debt if the debt was incurred for a business venture or with an eye toward profit. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988); *In re Terzo*, 502 B.R. 553, 557 (Bankr. N. D. Ill. 2013). However, the "profit motive" test is unworkable in some instances as "few human activities are entirely innocent of a profit motive". *In re Stewart,* 201 B.R. 996, 1005 (Bankr. N. D. Okla. 1996) (finding student loan to be consumer debt); *Millikan* at *5 (court found that "profit motive" test was "unworkable" in determining whether student loan was a consumer debt).

Hinchy asserts that the Debtor accessed Hinchy's pharmaceutical records for personal reasons related to Davion and whether the Debtor got pregnant intentionally and not for business reasons or with an eye to reap a profit. Certainly, the Judgment is not a business debt as the Debtor expected no profit from the acts that led to the

3

Judgment, other than perhaps the personal satisfaction of pinning blame on Hinchy for bearing Davion's child. The Debtor incurred the debt personally. But a "personal" debt still must meet the definition of a "consumer" debt.

In interpreting the term "consumer debt" as it is used in other parts of the Bankruptcy Code, courts have held that certain personal debts do not fit easily under the definition of "consumer debts". For example, courts have held that collection of a personal tax liability against a non-filing spouse does not violate the co-debtor stay provisions of §1301(a) because the tax is involuntarily imposed for a public purpose and therefore is not a "consumer debt" as defined in §101(8). *In re Westberry*, 215 F.3d 589, 591 (6th Cir. 2000) (income taxes not "consumer debt" for §1301 purposes); *In re Dye*, 190 B.R. 566 (Bankr. N.D. Ill. 1995); *In re Greene*, 157 B.R. 496, 497 (Bankr. S. D. Ga. 1993) ("[a] majority of the cases interpreting Section 1301 have concluded that a tax liability is not a consumer debt because the debt is incurred while earning income and not during consumption activity"); *In re Reiter*, 126 B.R. 961, 964 (Bankr. W. D. Tex. 1991); *In re Stovall,* 209 B.R. 849, 854 (Bankr. E. D. Va. 1997) (holding that debt for personal property tax is not a "consumer debt" for §1301 purposes, even if the property taxed is held for personal, family or household use).

Debt arising from the negligent operation of an automobile is not a "consumer debt". *In re Ajunwa,* 2012 WL 3820638 at *8 (Bankr. S.D.N.Y. September 4, 2012); *In re Marshalek*, 158 B.R. 704, 707 (Bankr. N. D. Ohio, 1993); *In re White*, 49 B.R. 869, 872 (Bankr. W.D.N.C. 1985) (judgment from negligent operation of automobile was not "incurred" voluntarily and was incurred "incidental to and not first and foremost to achieving personal aim"). The courts in *Marshalek* and *White* employed a restrictive reading of §101(8), suggesting that a "consumer" debt must be one incurred by volition and that a voluntary act that leads to a debt being involuntarily incurred is not enough. White limited the definition of "consumer debt" to those debts that arise from the voluntary purchase of goods on credit. 49 B. R at 872-73. (The debt incurred in buying gas for a car while on the way to the grocery to buy the family food may be a consumer debt, but the judgment resulting from the car accident negligently caused on the way is not.). At least one district court has disagreed with this restrictive reading of §101(8) and

4

instead defined a consumer debt as one that a debtor "would ordinarily expect to incur in his daily affairs other than business expenses". *In re Walton*, 69 B.R. 150, 154 (E.D. Mo. 1996) (debtor's AFDC liability, though not voluntary, was a "consumer debt"). The Judgment here doesn't fit into even the less restrictive definition since it was not the type of debt the Debtor "would ordinarily expect to incur in her daily affairs".

The mere fact that the Judgment is not a "business" debt does not mean it *per se* fits the definition of a "consumer" debt. "An inability to classify a particular debt as a business debt does not automatically relegate it to the status of a consumer debt". *Marshalek,* at 70 ("the nature of the debts in the present matter are purely individual debts, as opposed to consumer debts"). In re Marshalek, 158 B.R. 704, 707 (Bankr. N.D. Ohio 1993). Section 707(b) applies only to "individuals whose debts are primarily consumer debts". That phraseology is narrower than had the statute been worded to apply to the broader subset of "individuals whose debts are not primarily business debts". A "consumer debt" is only a subset of "non business debt". There are debts that fall into an "interstitial" area of debts that are not consumer debts, but yet are not business debts. *Stovall*, 209 B.R. 854. The Judgment is such a debt. If a tort judgment from the negligent operation of a car is not a consumer debt, it is hard to see how an intentional tort judgment from the improper accessing of medical information is a consumer debt. The act that led to the Judgment may have been undertaken voluntarily but the Judgment was involuntarily incurred and it is not the type of debt that the Debtor would expect to incur in her daily affairs. The Judgment here is not a consumer debt as that term is defined in §101(8) and the provisions of §707(b) do not apply.

### *Dismissal for Cause under §707(a)*

Section 707(a) provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
- (1) Unreasonable delay by the debtor that is prejudicial to creditors;
- (2) Nonpayment of any fees or charges required under chapter 123 of title 28; and

5

> (3) Failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

Section 707(a) applies to all chapter 7 debtors, not just those whose debts are primarily consumer debts.  Use in paragraph (a) of the phrase "for cause, including" makes it clear that the list set out in this section is not exhaustive of what could constitute "cause" to dismiss a case. *In re Pedigo*, 329 B.R. 47, 48 (S. D Ind. 2005).  The three "causes" enumerated are technical and procedural in nature prompting some courts to limit "cause" to those types of violations of the bankruptcy code.  Some courts have taken a more expansive view and determined that a debtor's bad faith or lack of good faith in filing the chapter 7 case is "cause" to dismiss a case even though the phrase "bad faith" appears nowhere in §707(a). See, *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991); *In re Tamecki,* 229 F.3d 205, 207 (3rd Cir. 2000). Others have opted to focus not on "bad faith" but rather on a debtor's prepetition conduct which in turn may evidence bad faith. *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994); *In re Padilla*, 222 F.3d 1184, 1188 (9th Cir. 2000) (chapter 11 or 13 can be dismissed for lack of good faith because their respective confirmation standards and chapters refer to "good faith", but there is no such counterpart in chapter 7).

The Seventh Circuit has not yet considered whether a debtor's bad faith in filing the case constitutes a "cause" for dismissal under §707(a).  This district in *Pedigo* held that bad faith is "cause" to dismiss a chapter 7 case.  329 B.R. at 48-51.  *Pedigo* was decided before the enactment of BAPCPA  which substantially amended §707(b) regarding consumer debtors and expressly provided that the court shall consider "whether the debtor filed the petition in bad faith" in determining whether the granting of relief would be an abuse of the provisions of chapter 7.  §707(b)(3)(A).  With no parallel BAPCPA amendment adding the phrase "bad faith" to §707(a) - which applies to both consumer and non consumer debtors – some courts within the Seventh Circuit have held that consideration of a debtor's "bad faith" is permissible only under §707(b) and

6

not §707(a). *In re Adolph*, 441 B.R. 909, 911(Bankr. N. D. Ill. 2011*).* Nonetheless, the majority of courts post-BAPCPA have held that "bad faith" continues to be a "cause" for dismissal under §707(a). *In re Perlin*, 497 F.3d 364, 369 (3rd Cir. 2007); *In re Tallman*, 417 B.R. 568, 575 (N.D. Ind. 2009).

Moreover, courts have frequently held that filing for bankruptcy in order to counter the collection efforts of one creditor without further indicia of bad faith is insufficient for dismissal under § 707(a).In re Sudderth, No. 06–10660, 2007 WL 119141, at *2 (Bankr.M.D.N.C.2007); In re Glunk, 342 B.R. 717, 736 (Bankr.E.D.Pa.2006); In re Mazzella, 2010 WL 5058395, at *6 ("However, the fact that the Debtor filed for bankruptcy in response to pending litigation without more additional evidence of misconduct is not enough to dismiss this case for cause under 11 U.S .C. § 707(a)"). In Keobapha, 279 B.R. at 50, the Debtor caused two deaths in a car accident, then filed for bankruptcy after paying out the policy limit on his car insurance. The court held that filing in response to a single lawsuit is not by itself sufficient to justify dismissal under § 707(a).Id. at 53

Dismissal of a case is within the court's discretion and "bad faith" is determined by considering the "totality of the circumstances" – as it was before the BAPCPA amendments. *Tallman*, 417 at 575. Factors include (1) whether the debtor has the present ability to pay his debts if he chooses; (2) whether the debtor has manipulated the bankruptcy process to frustrate one particular creditor; (3) the absence of any attempt to pay creditors; (4) whether the debtor is willing to make lifestyle changes to pay his debts; (5) whether the debtor is acting in good faith; (6) whether there is another proceeding through which the payment of claims can be handled; *In re Hopper*, 404 B.R. 302, 308 (Bankr. N. D. Ill. 2009); *In re Collins*, 250 B.R. 645. 654-55 (Bankr. N. D. Ill. 2000). The "ability to pay" alone is not sufficient to prove "bad faith" but it remains the most relevant factor. *In re Wagnitz*, 2004 WL 626821 at * 10 (N.D. Ill, March 29, 2004); see also, *Tallman* at 578 (bankruptcy court's denial of creditor's motion to dismiss reversed and remanded because it "failed to fully and fairly analyze the evidence before it regarding Tallman's income and expenses"). Neither the Debtor nor Davion testified as to their current income and expenses, current financial condition, or

7

ability to pay their debts. The court can take judicial notice of schedules and statement of financial affairs filed on the Petition Date, but that does not provide evidence of the Debtor's lifestyle, actions take to curb expenditures, or any other factor concerning the Debtor's current financial condition.  The avoidance of paying a large debt, the Judgment, is a compelling reason in favor of dismissal.  But that factor alone is insufficient for this court to dismiss this case under §707(a) without evidence of the Debtor's ability to pay.  Based upon Debtor's schedules alone, it appears that Debtor could certainly pay something on the judgment interest, but assuming Debtor's income does not dramatically change, Debtor would never be able to pay any amount of the judgment principal during the rest of Debtor's working life.  Furthermore, Walgreens -- with financial means substantially greater than the Debtor's -- is also liable on the Judgment and Hinchy stands a good chance of recovering the full amount of the Judgment from Hinchy's employer.  Finally, the act that caused the debt to be owed to Hinchy in the first place was an intentional tort committed by the Debtor.  Section 523 addresses the dischargeability of such torts and Hinchy has preserved her right to file an action to determine the dischargeability of the Judgment.  Hinchy has not lost any means by which to enforce the Judgment as she has other avenues by which her Judgment may be satisfied or may not be discharged.  The Court will not dismiss the case on bad faith grounds under §707(a) at this time.

### *Conversion under 706*

Section 706(b) provides:

(b) On request of a party in interest and after notice and hearing, the court may convert a case under this chapter to a case under 11 of this title at any time.

BAPCPA amended §707(b)(1) and that section requires that a chapter 7 bankruptcy can be converted to a chapter 11 bankruptcy only upon a consumer debtor's consent. BAPCPA placed no such limitation in §707(a) regarding non consumer debtors. *In re Gordon*, 465 B.R. 683, 691-692 (Bankr. N. D. Ga. 2012). Chapters 11 and 13 in §§1112 and 1307 list "causes" for conversion to chapter 7, but the chapter 7 counterpart of §706(b) contains no list of "cause" under which conversion to chapter 11 is appropriate.

8

The only caveat to conversion from a chapter 7 to a chapter 11 debtor is that the debtor be eligible to be a debtor under chapter 11.  Individuals that are debtors under chapter 7 are eligible to be debtors under chapter 11.  §109(d).  Conversion to chapter 11 is left to the court's discretion.  Among the factors to be considered  are whether the debtor can propose a confirmable plan, whether the primary purpose of the chapter 11 is to liquidate or reorganize, and  whether conversion benefits all parties in the case.  Id.  A debtor's ability to pay typically is a starting point in the analysis, however, since the whole reason for asking a case to be converted is the assumption that creditors would receive more in a chapter 11 than a chapter 7. Id at 693.

Here, the Court has no credible evidence of the debtor's current ability to pay in order to determine whether creditors would receive more in a chapter 11.  See, *Gordon,* at 691-692 (court conducted a detailed analysis of the debtor's income and expenses, concluding that the debtor underestimated his monthly disposable income by at least $3,000 a month, thus finding that conversion was appropriate); *In re Hardigan*, 490 B.R. 437, 447 (Bankr. S. D. Ga. 2013) (parties presented court with projected 21% payout over five years in hypothetical chapter 11, yet court denied motion to convert because debtor/cardiologist did not live beyond his means, and had no business to reorganize).  As previously mentioned, the Debtor is not the only party liable on the Judgment and any chapter 11 plan, presumably, would include Walgreens' obligation to pay the Judgment.  What can be accomplished in chapter 11 can be accomplished in the chapter 7 case.  There is no evidence that creditors would get more in the chapter 11 than they would in a chapter 7 case.  The Court will not convert the case.

For the reasons stated above, Hinchy's motion is DENIED.

# # #

9